UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Tracy Ann Riordan,

    Plaintiff,

    v.                        Civil Action No. 2:15–cv–245–jmc

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 9, 12)

      Plaintiff Tracy Riordan brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). Pending before the Court are Riordan's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 12). For the reasons stated below, Riordan's motion is DENIED; the Commissioner's motion is GRANTED; and the ALJ's decision is AFFIRMED.

**Background**

      Riordan was 46 years old on her alleged disability onset date of May 23, 2012. She completed high school and attended one year of college, studying nursing. (AR 40–41, 193.) She worked as a licensed nursing assistant (LNA) from approximately 1994 to 1997 and 2002 to 2012. (AR 42–44, 204–08, 210–11.) She also worked for approximately four years as a supervisor in the reservations department at Killington Call

Center. (AR 44–45, 204, 209.) She lives with her husband in Rutland, Vermont. (AR 41.)

In March 2014, Riordan testified that her most significant medical issue was back pain, which she has suffered from since 1997. (AR 45–46.) She stated that the pain radiates down her legs and into her feet, causing her legs to "go numb." (AR 46.) In 1997, Riordan had surgery to address her back pain, but her symptoms persisted. (*Id.*) Riordan also has muscle pain "throughout [her] body" (AR 47) and particularized pain in her knees and ankles (AR 51, 54) and in her left wrist (AR 55).[1] To relieve her pain, Riordan does physical therapy and takes several medications, including oxycodone, Zanaflex, Lyrica, and tramadol. (AR 47.) These medications cause her to become "very tired" to the point of limiting her ability to function. (*Id.*) Riordan further testified that she suffers from mental impairments, including anxiety, depression, posttraumatic stress disorder (PTSD), panic attacks, and insomnia. (AR 58–59.) To address these conditions, she takes Zoloft, Zyprexa, Xanax, Risperidone, clonidine, and Lunesta. (AR 59.) These medications have caused Riordan to gain weight, which has increased her back pain. (AR 50.)

As a result of her impairments,[2] Riordan claims she can be on her feet for only 15-minute intervals throughout the day (AR 40); she cannot drive for more than about two

---

[1] Riordan has had more than three ankle surgeries, the last one occurring in April 2013. (AR 54.) She has also had surgery on her wrist. (*Id.*)

[2] Riordan also testified that she has gastroesophageal reflux disease (GERD) and acid reflux, causing her to vomit several times a day. (AR 57.) There is, however, no evidence to support this claim. Likewise, and as discussed in detail below, there is no evidence to support Riordan's claims that her obesity and an eye condition limited her ability to function during the relevant period.

miles (AR 41, 217); she has difficulty climbing stairs (AR 70); she is scared to be around large groups of people (AR 67); and she cannot focus (AR 71).  On a typical day, she watches television, crochets (in 15-minute increments), does light housecleaning for short periods, cooks simple meals, and lies down for approximately five hours.  (AR 60–61, 70, 214, 216, 224–25, 227, 232–33, 235.)  In addition, she sees her grandchildren four or five times each week, shops in stores including grocery shopping with her husband once a week, and attends medical appointments.  (AR 61, 214–15, 226, 234.)

On August 8, 2012, Riordan filed her DIB application, alleging that, starting on May 23, 2012, she has been unable to work due to chronic back pain, degenerative disc disease, arthritis, PTSD, anxiety, depression, and insomnia.  (AR 191–93.)  In an updated disability form, Riordan stated that, since December 5, 2012, her depression, PTSD, and arthritis has worsened; and she has had trouble getting in and out of bed due to foot and ankle pain.  (AR 247.)  Riordan's application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  The hearing was held on March 7, 2014 by Administrative Law Judge (ALJ) Paul Martin.  (AR 35–79.)  Riordan appeared and testified, and was represented by an attorney.  A vocational expert (VE) also testified at the hearing.  On May 13, 2014, the ALJ issued a decision finding that Riordan was not disabled under the Social Security Act at any time from her alleged disability onset date through the date of the decision.  (AR 16–28.)  Thereafter, the Appeals Council denied Riordan's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–4.)  Having exhausted her administrative remedies, Riordan filed the Complaint in this action on November 19, 2015.  (Doc. 3.)

**ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that

there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Martin first determined that Riordan had not engaged in substantial gainful activity since her alleged disability onset date of May 23, 2012. (AR 18.) At step two, the ALJ found that Riordan had the following severe impairments: degenerative disc disease, osteoarthritis, anxiety-related disorder, and depression. (*Id.*) Conversely, the ALJ found that Riordan's GERD and left wrist pain were nonsevere. (*Id.*) At step three, the ALJ found that none of Riordan's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 19–20.) Next, the ALJ determined that Riordan had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Riordan] can occasionally climb stairs and ramps; she must avoid climbing . . . ladders, ropes, and scaffolds. She can occasionally kneel, crouch, and crawl. [She] can understand, remember, and carry out simple [one- to three-]step tasks and maintain concentration for [two-]hour periods of time in an environment without fast-paced production requirements and involving routine workplace changes and tasks. She can engage . . . supervisors and coworkers in routine, occasional interactions. She can interact with the public on a superficial, occasional basis, defined as greetings with no extensive interactions. She must avoid large crowds or working around more than [eight-to-ten] people in close proximity.

(AR 20.) Given this RFC, the ALJ found that Riordan was unable to perform her past relevant work as a LNA, a LNA supervisor, and a reservations manager. (AR 26.) Finally, based on testimony from the VE, the ALJ determined that Riordan could perform

other jobs existing in significant numbers in the national economy, including the representative jobs of order caller, maid, and price marker. (AR 26–27.) The ALJ concluded that Riordan had not been under a disability from her alleged disability onset date of May 23, 2012 through the date of the decision. (AR 27–28.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126

(2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Riordan makes three arguments in favor of remand: (1) the ALJ failed to consider Riordan's obesity and eye condition in his RFC determination; (2) the ALJ erred in his analysis of the opinions of treating physicians Dr. Lorri Golin and Dr. Timothy Cook; and (3) the ALJ failed to consider Riordan's mental and physical impairments in combination. (Doc. 9-1.) In response, the Commissioner contends that the ALJ's decision complies with the applicable legal standards and is supported by substantial evidence. (Doc. 12.)

**I.     ALJ's Consideration of Riordan's Obesity and Eye Condition**

First, Riordan argues that the ALJ should have included her obesity and her eye condition in his RFC determination.

**A.     Obesity**

Riordan testified at the March 2014 administrative hearing that she was approximately five feet tall and weighed 194 pounds. (AR 40.) She stated that she had gained about 30 pounds in the six months prior to the hearing, principally due to

7

medication changes and her inability to exercise. (AR 40, 49.) She also stated that the increase in mental health medications resulted in weight gain, which resulted in increased back pain. (AR 50.) In her Disability Report, however, Riordan did not list obesity as one of her "physical or mental conditions . . . that limit[ed] [her] ability to work." (AR 192.) Moreover, none of Riordan's treating or consulting medical sources limited her due to obesity. In fact, the only medical record possibly tying Riordan's obesity to a physical or mental limitation merely states that her obesity "may[]be exacerbating her symptoms" of right ankle instability. (AR 676; *see also* AR 818.) Acknowledging this record, the ALJ stated in his decision: "Dr. Rinaldi noted [that] [Riordan] had obvious ankle instability, exacerbated by obesity." (AR 22 (citing AR 673, 676).) The ALJ accurately explained, however, that Riordan underwent surgery for her right ankle instability in April 2013, and thereafter, the condition resolved. (AR 22, 789, 791, 793–96, 852.)

Riordan argues that the ALJ erred in failing to "mention obesity as an impairment at any step of his decision." (Doc. 9-1 at 6.) But she does not explain how her obesity would have affected the ALJ's five-step analysis, and she does not cite any evidence indicating that her obesity impaired her ability to function during the alleged disability period. The Second Circuit has held that "[o]besity is not in and of itself a disability," and "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." *Cruz v. Barnhart*, No. 04 CIV 9011 (GWG), 2006 WL 1228581, at \*9 (S.D.N.Y. May 8, 2006). Social Security Ruling (SSR) 02-1p discusses how ALJs should evaluate obesity claims, and provides as follows: "The combined effects of

8

obesity with other impairments may be greater than might be expected without obesity. . . . As with any other impairment, [the ALJ] will explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." SSR 02-1p, 2002 WL 34686281, at *6, *7 (Sept. 12, 2002). The Sixth Circuit observed that SSR 02-1p does not mandate a particular mode of analysis in obesity cases: "It is a mischaracterization to suggest that [SSR] 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006).

      The record contains no evidence that Riordan's obesity limited her ability to work. Rather, the record demonstrates that Riordan's physical examinations were largely normal, and her medical providers advised her to increase her activity level. (*See, e.g.*, AR 346, 610, 731, 835, 934, 1020, 1057.) Therefore, the ALJ did not err in failing to reference Riordan's obesity in his decision. *See Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (no ALJ error in determining claimant's obesity was not a severe impairment because claimant "did not furnish the ALJ with any medical evidence showing how th[is] alleged impairment[] limited his ability to work"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 & n.5 (3d Cir. 2005) (declining to remand due to ALJ's failure to consider plaintiff's obesity, when plaintiff "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments," and no medical evidence indicated obesity contributed to any limitation); *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (rejecting claimant's obesity argument, and finding that ALJ's failure to elaborate on the

issue of obesity "likely stems from the fact that [the claimant] failed to present evidence of any functional limitations resulting specifically from her obesity); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) (rejecting claimant's argument that ALJ erred in failing to consider his obesity, explaining that, "[a]lthough his treating doctors noted that [the claimant] was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions").

### B. Macular Drusen (Eye Condition)

Nor did the ALJ err in failing to consider Riordan's eye condition known as macular drusen in his decision. At the administrative hearing, Riordan testified that she is unable to work on computers because she has an eye disease that "makes [her] eyes water and tear up" when she works on computers. (AR 62.) Riordan further testified that her vision is "starting to get distorted from . . . the [eye] disease," which was discovered "a couple [of] years" prior to the hearing. (AR 63.) There is no evidence supporting Riordan's claim that an eye condition limited her ability to function. In fact, the only medical note discussing the condition demonstrates that it did not limit Riordan's ability to function at all, stating that Riordan "was assured [that] she shows normal macular function" and "stable" acuity. (AR 773.) The ALJ was not obligated to accept Riordan's testimony to the contrary.[3] Thus, the ALJ did not err in failing to account for Riordan's eye condition in his RFC determination.

---

[3] Notably, and as discussed in more detail below, Riordan does not contest the ALJ's negative assessment of her credibility. (*See* AR 21–22, 24.)

## II.     ALJ's Analysis of Treating Physician Opinions

Next, Riordan asserts that the ALJ erred in his analysis of the opinions of treating physicians Dr. Lorri Golin and Dr. Timothy Cook.  The ALJ was required to analyze these opinions under the "treating physician rule," given that Dr. Golin and Dr. Cook were Riordan's treating physicians during the relevant period.  Under that rule, a treating source's opinions on the nature and severity of a claimant's condition are entitled to "controlling weight" if they are "well[]supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993).  The deference given to a treating source's opinions may be reduced, however, in consideration of other factors, including the length and nature of the treating source's relationship with the claimant, the extent to which the medical evidence supports the treating source's opinions, whether the treating source is a specialist, the consistency of the treating source's opinions with the rest of the medical record, and any other factors "which tend to . . . contradict the opinion[s]."  20 C.F.R. § 404.1527(c)(2)–(6); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  If the ALJ gives less than controlling weight to a treating source's opinions, he must provide "good reasons" in support of that decision.  *Burgess v. Astrue*, 537 F.3d 117, 129–30 (2d Cir. 2008).

### A.     Dr. Golin

Riordan first treated with Dr. Golin, a psychiatrist, on May 31, 2012.  (AR 338.)  Riordan told Dr. Golin that her father had recently died of a heart attack and she had left her job the day before.  (*Id.*) She presented with anxious and depressed mood, but she

11

was cooperative with clear and normal speech; her thoughts were goal oriented; there was no evidence of suicidal, delusional, or psychotic thoughts; and her insight and judgment were intact. (*Id.*) Dr. Golin diagnosed PTSD and major depressive disorder. (*Id.*) About three months later, in August 2012, Riordan returned to see Dr. Golin, reporting that "[t]hings are going good" and that her mood was "great." (AR 473.) Again, she had a cooperative attitude, appropriate affect, normal speech, goal-directed thoughts, and intact insight and judgment. (*Id.*) Dr. Golin recommended that she follow up in six weeks to pursue "further [reduction in her medications]." (*Id.*) On October 17, 2012, Dr. Golin opined in a Mental Capacity Assessment that Riordan had a variety of moderate and marked limitations in various work-related mental activities, and identified diagnoses of PTSD and recurrent major depressive disorder. (AR 602–04.) Riordan's next visit with Dr. Golin was on December 5, 2012, and Riordan reported that she was sleeping better and not dwelling as much on "past traumas." (AR 864.) A mental status examination was normal, except for a sad affect and depressed mood. (*Id.*) Dr. Golin opined that Riordan was "[n]ot stable for work return due to PTSD issues [and] medical/orthopedic issues" and indicated that Riordan should return for a follow-up appointment in "1–2" months.[4] (*Id.*)

Riordan argues that the ALJ erred by failing to consider this December 2012 opinion of Dr. Golin that Riordan should not return to work. (Doc. 9-1 at 9 (citing AR

---

[4] The Commissioner appears to have misread this treatment note, stating that Dr. Golin indicated therein that Riordan's condition "would last '1–2' months" (Doc. 12 at 9 (quoting AR 864); *see also id.* at 19–20), when in fact, a close reading of the note indicates that Riordan should see Dr. Golin in follow up in "1–2" months (AR 864), not that Riordan's condition would last that long.

12

864).)  It is true that the ALJ did not explicitly consider this opinion in his decision;[5] but there are two reasons why this omission does not constitute error.  First, the opinion appears to apply only to a limited period of time, given that Dr. Golin treated Riordan on many occasions after the December 5, 2012 visit and did not repeat the opinion in any of those subsequent visits.[6]  (*See* AR 852–63, 1010–11, 1072–75.)  Under the regulations, for a claimant to receive disability benefits, her disabling impairments "must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.  Dr. Golin's opinion that Riordan could not work at one particular appointment during the alleged disability period does not meet that requirement.  Second, the statement that Riordan was "[n]ot stable for work return" (AR 864), is conclusory and on a subject reserved solely for the Commissioner.  The regulations provide that "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," 20 C.F.R. § 404.1527(d)(1), because whether a claimant is disabled or unable to work is an "administrative finding[] that [is] dispositive of [the] case," and thus is an issue reserved to the Commissioner, *id.* at § 404.1527(d).

---

[5]  In contrast, the ALJ explicitly considered and analyzed Dr. Golin's more formal opinions made in her October 2012 Mental Capacity Assessment.  (*See* AR 25, 601–04.)  Specifically, the ALJ gave those opinions "little weight," finding that they are "not well supported by or consistent with either Dr. Golin's own treatment notes or the evidence of record in general."  (AR 25.)  The ALJ further explained that these opinions are "not based upon [Riordan's] longitudinal presentation, but instead based upon a single visit, where [she] presented with exacerbated symptoms related to a recent change in her physical condition."  (*Id.*)  Riordan does not challenge the ALJ's analysis regarding these opinions, and the Court finds it legally proper and supported by substantial evidence.

[6]  Also noteworthy, a handwritten note at the bottom of the December 5, 2012 treatment note indicates that Riordan was a "[n]o show" for her next follow-up appointment with Dr. Golin, on February 26, 2013.  (AR 864.)

Accordingly, Dr. Golin's statements contained in her December 5, 2012 treatment note are not entitled to special significance, and Riordan has failed to demonstrate any error in the ALJ's failure to explicitly consider them. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

**B.     Dr. Cook**

Next, Riordan claims the ALJ erred in his analysis of the December 12, 2013 opinions of Dr. Cook, a family practitioner who treated Riordan approximately 30 times since 2011. (AR 52.) In a December 2013 RFC Questionnaire, Dr. Cook listed Riordan's diagnosis as "[b]ack pain" and her prognosis as "[g]ood." (AR 1039.) He opined as follows: Riordan could sit for no more than three hours and stand/walk for no more than one hour in an eight-hour workday; Riordan would need to recline or lie down in excess of the typical break periods allowed in an eight-hour workday; and Riordan would need to shift positions at will from sitting, standing, and walking. (*Id.*) Dr. Cook further opined that Riordan would likely be absent from work more than four times a month. (AR 1040.) Dr. Cook concluded that Riordan was not "physically capable of working an 8[-]hour day [for] 5 days a week . . . on a sustained basis." (*Id.*)

Despite recognizing that Dr. Cook was a "treating provider[]" (AR 22), the ALJ gave "little weight" to his December 2013 opinions (AR 22, 25), on the grounds that they are "not consistent with the evidence of record" (AR 25), which includes "largely normal clinical examinations" (AR 22). The ALJ explained:

14

> Treatment notes do not show that [Riordan] presented as uncomfortable at office visits and needed to shift positions; the record does not reflect complaints of this need. Further, the medical record shows that [Riordan] had multiple orthopedic conditions, each of which resolved with treatment. Her baseline level of functioning . . . does not reflect such limitations.

(AR 25.)  Riordan claims that the ALJ erred in failing to give more than one reason for affording little weight to Dr. Cook's opinions. (*See* Doc. 9-1 at 11.)  But there is no requirement that ALJs give multiple reasons in support of their analysis of a treating physician's opinions, and the Second Circuit does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation[s] are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

Moreover, the ALJ supported his finding that Dr. Cook's opinions are inconsistent with the medical evidence by accurately describing the medical record–including the treatment notes of Dr. Cook–as containing "largely normal clinical examinations." (AR 22; *see* AR 23–25, 346, 610, 684–85, 730–31, 789, 835, 849–50.)  The ALJ also properly considered that the record contains multiple treatment notes referencing Riordan's "symptom magnification" (AR 22; *see also* AR 25 ("the record reflects concern that [Riordan] was exaggerating the severity of her symptoms")), and recommending "increased activity" to improve Riordan's pain and mobility (AR 23). (*See, e.g.*, AR 527 ("The most striking physical exam finding . . . is signs consistent with symptomatic magnification and nonphysiologic neurologic abnormalities") ("I recommended activity"), 835 ("Activity is good and seeking bedrest is bad"), 922 (recommending continuation of "home exercise program" and return to physical therapy

15

program).)  Finally, the ALJ reasonably found that the opinions of nonexamining agency consultant Dr. Leslie Abramson were entitled to "great weight"—even though Dr. Abramson did not "personally meet with or examine" Riordan and even though Dr. Abramson made her opinions before all treatment notes were received into the record—because these opinions are "well supported by and consistent with the evidence of record," including the "treatment notes and examinations."  (AR 25.)  *See Schisler*, 3 F.3d at 568 ("[the regulations] permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record"); *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) ("No case or regulation . . . imposes an unqualified rule that a medical opinion is superseded by additional material in the record, and in this case the additional evidence does not raise doubts as to the reliability of [the agency consultant's] opinion.").

## III.    ALJ's Consideration of Riordan's Impairments in Combination

Finally, Riordan argues that the ALJ erred in failing to consider her impairments in combination.  Specifically, Riordan contends that the ALJ should have explicitly considered the effects of her mental impairments on her physical impairments, pointing out that multiple treating providers stated in treatment notes that Riordan's mental health symptoms exacerbated her physical health symptoms.  (*See* Doc. 9-1 at 11–12 (citing AR 850, 933, 995).)  The record does in fact contain statements from Riordan's treating providers indicating that her mental health problems may have increased the apparent severity of her physical problems.  For example, Dr. Michael Kenosh stated: "Certainly [Riordan's] mental health issues may greatly exacerbate [her musculoskeletal or chronic

16

pain syndrome]." (AR 850.) And Dr. William Lighthart stated: "I think her [physical] symptoms are likely magnified as a result of her depression." (AR 933; *see also* AR 995.) The ALJ properly found, however, that there was little objective medical evidence supporting Riordan's claims of physical limitation, and Riordan's allegations of disabling pain and mental illness are not fully credible. (AR 21–22, 24.)

Riordan does not question the ALJ's assessment that her statements regarding the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." (AR 21.) The ALJ explained:

> [Riordan's] allegations are not entirely supported by or consistent with the evidence of record. Treatment notes, clinical examinations, and daily activities show that [she] is not as limited as she alleged. Further, the record does contain questionable behavior regarding medi[c]ation-seeking and symptom magnification, which impacts the assessment of [her] credibility.

(AR 21–22.) The ALJ further stated that Riordan's "narcotic-seeking behavior"— including presenting at medical appointments overmedicated, fatigued, groggy, and with slurred speech; seeing multiple providers who prescribed multiple different prescriptions; and failing to advise emergency department medical providers of prescribed medications she was taking—also "factor[ed] in[to] the assessment of [Riordan's] credibility, as narcotic-seeking behavior . . . calls into question the credibility of her complaints of pain, particularly when contrasted to clinical examinations that were largely normal." (AR 24.) Again, Riordan does not contest this assessment of her credibility, and the Court finds that it is supported by substantial evidence. (*See, e.g.*, AR 214–16, 233–35, 818, 829, 860, 925, 1044, 1047, 1057.) *See Monette v. Colvin*, 654 F. App'x 516, 519 (2d Cir.

17

2016) (summary order) ("Credibility is a matter committed to the sound discretion of the ALJ, and we will not identify error so long as the finding is supported by substantial evidence . . . .") (citing *Aponte v. Sec'y, Dep't of HHS*, 728 F.2d 588, 591 (2d Cir. 1984)).

Furthermore, the ALJ's decision demonstrates that he identified and considered all of Riordan's impairments–mental and physical–as well as the functional limitations caused by the combination thereof, in determining Riordan's RFC.  (*See* AR 19–20.) Where, as here, the ALJ's decision identifies each of the claimant's impairments, the decision is "not vulnerable to . . . reversal" on grounds that the ALJ failed to consider all of the claimed impairments in combination.  *Tinsley v. Barnhart*, Civil No. 3:01CV977(DJS)(TPS), 2005 WL 1413233, at *6 (D. Conn. June 16, 2005); *see Forrest v. Astrue*, Civil Action No. 2:10–CV–20, 2011 WL 759401, at *11–12 (D. Vt. Feb. 24, 2011).  Thus, the ALJ's failure to explicitly consider the effect that Riordan's mental impairments had on her physical impairments is not reason for remand.

## Conclusion

For these reasons, the Court DENIES Riordan's motion (Doc. 9), GRANTS the Commissioner's motion (Doc. 12), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 12th day of December, 2016.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge